IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF IOWA
COUNCIL BLUFFS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 16-00490 lmj13 |
| | ) | |
| Scott David Clark, | ) | |
| | ) | |
| | ) | MOTION FOR RELIEF |
| Debtor. | ) | FROM AUTOMATIC STAY |

COMES NOW Wells Fargo Bank, N.A., as Trustee for Lake Country Mortgage Loan Trust 2006-HE1, by Ditech Financial LLC, as Servicer with delegated authority for the trustee, its successors or assigns ("Wells Fargo Bank, N.A."), by and through its attorneys, Davis, Brown, Koehn, Shors & Roberts, P.C., pursuant to 11 U.S.C. § 362(d) and Bankruptcy Rule 4001(a)(1), and respectfully states to the Court the following in support of its Motion for Relief from Stay:

1. This Court has jurisdiction of this matter pursuant to 28 U.S.C. Section 157(b)(2)(G) and 11 U.S.C. Section 362.

2. Scott David Clark ("Debtor") filed a Petition in this Court under Chapter 13 of the United States Bankruptcy Code on or about March 15, 2016. The Debtor listed in Debtor's schedules an interest in real property situated in Pottawattamie County, Iowa, locally known as 34507 Elmtree Road, Carson, IA 51548, and legally described as follows:

A PART OF THE NORTHEAST 1/4 NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 75, RANGE 41, POTTAWATTAMIE COUNTY, IOWA, WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTH 1/4 CORNER OF SAID SECTION 26, THENCE SOUTH 00 DEGRESS 42'05" WEST 475.68 FEET ALONG THE CENTERLINE OF A COUNTY ROAD, THENCE NORTH 89 DEGREES 17'55" WEST, 386.25 FEET THENCE NORTH 0 DEGRESS 42'05" EAST 475.68 FEET, THENCE SOUTH 89 DEGREES 17'55" EAST 386.25 FEET TO THE POINT OF BEGINNING.

(hereinafter referred to as the "Property").

3.      As of June 9, 2016 Wells Fargo Bank, N.A. is the holder of a secured claim against the Property in the principal amount of $119,494.96, together with accrued interest at the rate of Ten percent (10.00%) per annum from and after September 1, 2014, by virtue of the Debtor's making of a Mortgage dated September 29, 1998 and a Mortgage Note of even date.  Copies of the Mortgage and Mortgage Note are attached hereto as Exhibit "A".

4.      Wells Fargo Bank, N.A. does not have, and has not been offered, adequate protection for its interest in and to the Property.  As of June 9, 2016 the Debtor has failed to make Debtor's monthly installment payments of $1,298.44 for April 1, 2016 through June 1, 2016, and thereafter, which together with the attorneys' fees and costs incurred in connection with this Motion, and accruing interest and costs, is a delinquency which constitutes a default under the terms of the Mortgage and Mortgage Note.

5.      The Debtor has no equity in the Property and has no prospect for reorganization, as the Debtor has filed a petition for reorganization under Chapter 13 of the Bankruptcy Code and has defaulted on the plan of reorganization calling for payments outside of the plan to Wells Fargo Bank, N.A. On information and belief, Wells Fargo Bank, N.A. asserts that the Property has a value less than the amount of its claim.

6.      The Debtor is in arrears on the payments on the mortgage indebtedness that have come due since the date of filing.  This post petition delinquency constitutes additional cause for relief from the automatic stay under section 362(d)(1).

7.      If Wells Fargo Bank, N.A. is prevented from foreclosing its Mortgage in and to the Property, it will suffer irreparable injury, loss and damage.

8. The Order sustaining this Motion should provide that it is effective immediately upon entry and that the fourteen day stay provided for in Bankruptcy Rule 4001(a)(3) shall not apply.

9. The Order sustaining this Motion shall constitute the abandonment of the Property from the Bankruptcy Estate and Wells Fargo Bank, N.A. shall not be obligated to join the Trustee as a defendant in the foreclosure proceeding, if any.

10. Debtor executed a promissory note secured by a mortgage or deed of trust. The promissory note is either made payable to Creditor or has been duly indorsed. Creditor, directly or through an agent, has possession of the promissory note. Creditor is the original mortgagee or beneficiary or the assignee of the mortgage or deed of trust.

11. The entry of an Order granting relief from automatic stay upon this Motion shall suspend the future operation of Bankruptcy Rule 3002.1 to the Property and Movant, or its successors or assigns, shall not thereafter be obligated to issue Notice of Payment Changes, or Notice of Post-petition Mortgage Fees, Expenses and Charges, in this case, except if hereafter otherwise ordered by the Court.

WHEREFORE, Wells Fargo Bank, N.A. respectfully requests that upon final hearing on this Motion for Relief from Stay, and pursuant to 11 U.S.C. Section 362(d), the stay be modified, and the Property be deemed abandoned, to permit Wells Fargo Bank, N.A. to foreclose its Mortgage on the Property; that Bankruptcy Rule 3002.1 have no further application, and for such other and further relief as is just and equitable in the circumstances.

Dated: June 22 , 2016.

Respectfully submitted,

/s/ Mark D. Walz
Mark D. Walz (IS9999605)
Davis, Brown, Koehn, Shors & Roberts, P.C.
4201 Westown Parkway, Suite 300
West Des Moines, Iowa 50265
(515) 246-7898
markwalz@davisbrownlaw.com

ATTORNEY FOR WELLS FARGO BANK, N.A.

Copy to:

United States Trustee's Office
Room 793, Federal Building
210 Walnut Street
Des Moines, Iowa 50309

Carol F. Dunbar
531 Commercial Street, Suite 500
Waterloo, IA 50701

Wesley H. Bain, Jr.
11717 Burt Street, # 106
Omaha, NE 68154

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon all parties to the above cause by depositing the same in the U.S. Mail, postage per-paid, to their respective mailing addresses disclosed on the pleadings or, in the event the party is represented by counsel, to their counsel; or notice of the filing of this instrument was sent by e-mail, via CM/ECF, to all parties on the service list who have registered to receive service by e mail over CM/ECF, on June 22, 2016.

Signature: s/s Mark D. Walz

COMPARED

INST # 6569
RECORDING FEE 50.00
AUDITOR FEE
RMA FEE 1.00

FILED FOR RECORD
POTTAWATTAMIE CO. IA.
98 OCT -7 AM 9:08
JOHN SCIORTINO
RECORDER

This instrument prepared by: CLASSIC TITLE

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on **29th day of September, 1998.** The Mortgagor is **Scott David Clark, a single person** ("Borrower"), whose address is **5052 S 86 PKWY #3, Omaha, NE 68127.** This Security Instrument is given to **Paragon Lending, which is organized and existing under the laws of the United States of America, and** whose address is **9771-A Southern Pine Blvd, Charolette NC 28273** ("Lender"). Borrower owes Lender the principal sum of **One Hundred Forty Eight Thousand Five Hundred & NO/100 Dollars (U.S. $148,500.00).** This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **October 1, 2028.** This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **Pottawattamie** County, **Iowa:**

**A PART OF THE NORTHEAST 1/4 NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 75, RANGE 41, POTTAWATTAMIE COUNTY, IOWA, WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTH 1/4 CORNER OF SAID SECTION 26, THENCE SOUTH 00 DEGRESS 42'05" WEST 475.68 FEET ALONG THE CENTERLINE OF A COUNTY ROAD, THENCE NORTH 89 DEGREES 17'55" WEST, 386.25 FEET THENCE NORTH 0 DEGRESS 42'05" EAST 475.68 FEET, THENCE SOUTH 89 DEGREES 17'55" EAST 386.25 FEET TO THE POINT OF BEGINNING.**

which has the address of **34507 Elmtree Rd, McClelland, Iowa 51548**
[Street] [City] [Zip Code]

("Property Address")

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to

Return to: Paragon Lending
9771A Southern Pines Blvd
Charolette NC 28273

SC

mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U. S. C. SS 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraphs 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the



Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights to the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merge in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage

SC

insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note

SC

are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer" ) that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.



**23. Waivers.** Borrower relinquishes all right of dower and waives all right of homestead and distributive share in and to the Property. Borrower waives any right of exemption as to the Property.

**24. Redemption Period.** If the Property is less than 10 acres in size and Lender waives in any foreclosure proceeding any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 6 months. If the court finds that the Property has been abandoned by Borrower and Lender waives any right to a deficiency judgment against Borrower, the period of redemption from judicial sale shall be reduced to 60 days. The provisions of this paragraph 24 shall be construed to conform to the provisions of Sections 628.26 and 628.27 of the Code of Iowa.

**25. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] V.A.Rider | [X] Other(s) [specify] **Floor Rate Rider** | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

The undersigned borrower(s) acknowledge(s) receipt of a copy of this instrument.

Witness Signature

Witness Printed Signature

Witness Signature

Witness Printed Signature

[signature]
Scott David Clark

STATE OF NEBRASKA
COUNTY OF DOUGLAS

On this **29th day of September, 1998,** before me, the undersigned, a Notary Public duly commissioned and qualified for said county, personally came **Scott David Clark, a single person** to me known to be the identical person(s) whose name(s) are subscribed to the foregoing instrument and acknowledged the execution thereof to be a voluntary act and deed.

My Commission expires: ______________________

[signature]
Notary Public in and for said County and State

GENERAL NOTARY-State of Nebraska
CO QUETTE JENSEN
My Comm. Exp. July 26, 2002

SCHEDULE "A"

A PART OF THE NORTHEAST 1/4 NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 75, RANGE 41, POTTAWATTAMIE COUNTY, IOWA, WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTH 1/4 CORNER OF SAID SECTION 26, THENCE SOUTH 00 DEGRESS 42'05" WEST 475.68 FEET ALONG THE CENTERLINE OF A COUNTY ROAD, THENCE NORTH 89 DEGREES 17'55" WEST, 386.25 FEET THENCE NORTH 0 DEGRESS 42'05" EAST 475.68 FEET, THENCE SOUTH 89 DEGREES 17'55" EAST 386.25 FEET TO THE POINT OF BEGINNING.



# ADJUSTABLE RATE RIDER

**(LIBOR INDEX - RATE CAPS)**

THIS ADJUSTABLE RATE RIDER is made this 29TH day of SEPTEMBER, 19 98 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to PARAGON LENDING, (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

34507 ELMTREE ROAD
MC CLELLAND, IA 51548
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 9.740 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the first day of OCTOBER, 2000, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

Initial SC



**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in THE WALL STREET JOURNAL. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN percentage point(s) ( 7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.740 % or less than 9.740 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.740 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

Initial JC

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Intrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

Scott David Clark (Seal)
SCOTT DAVID CLARK -Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

_______________ (Seal)
-Borrower

# FLOOR RATE RIDER

**(For 6-Month LIBOR, 2-Year LIBOR, and 3-Year LIBOR ARM Loan Program Disclosures)**

THIS FLOOR RATE RIDER is made this **29TH** day of **SEPTEMBER, 1998** and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date made by the undersigned (the "Borrower") to **PARAGON LENDING** (the "Lender") and to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the Borrower to secure the Note and covering the property described in the Security Instrument and located at:

**34507 ELMTREE ROAD MC CLELLAND, IA 51548**
[Property Address]

**AMENDMENT TO NOTE AND SECURITY INSTRUMENT**

1. Section 4.(D) of the Note and the corresponding Section 4.(D) under Additional Covenant A. of the adjustable Rate Rider to the Security Instrument is amended to read and be as follows:

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **12.740** % or less than **9.740** %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.00%) from the rate of interest I have been paying for the preceding six months. My yearly interest rate will never be greater than a maximum rate of **15.740** %, or a minimum, or floor, rate of **9.74** %.

2. The disclosure appearing in bold type face on page 1 of the Note is amended to read and be as follows:

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE AND THE MINIMUM, OR FLOOR, RATE I MUST PAY.**

3. In the event that the Note is ever sold, assigned or transferred to the Federal National Mortgage Association or the Federal Home Loan Mortgage Corporation, this Floor Rate Rider and expressly its amended provisions with respect to establishing a minimum, or floor rate, shall thereupon terminate and shall be of no further force and effect. Any such termination of this Floor Rate Rider shall be effective as of the first Change Date to occur after the date of any such sale, assignment or transfer, and thereupon and thereafter the Note shall be in full force and effect in accordance with its original terms as set out in Section 4.(D) of the Note as if this Floor Rate Rider had never been incorporated into or amended the Note.

BY SIGNING BELOW, Borrower acknowledges and agrees to the terms contained in the Floor Rate Rider.

Scott David Clark (Seal) -Borrower
SCOTT DAVID CLARK

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

# ADJUSTABLE RATE NOTE

(LIBOR INDEX - RATE CAPS)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

SEPTEMBER 29 , 19 98 OMAHA , NE
[City] [State]

34507 ELMTREE ROAD
MC CLELLAND, IA 51548
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 148,500.00 (This amount is called "principal"), plus interest, to the order of the Lender. The Lender is PARAGON LENDING,

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9.740 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on NOVEMBER 1 , 1998 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on OCTOBER 1 , 2028 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make my monthly payments at 9771-A SOUTHERN PINE BLVD,CHLT,NC 28273

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,274.76 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Initial S.C. Initial ______
Initial ______ Initial ______

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of OCTOBER 1 ,2000 and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in THE WALL STREET JOURNAL. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN percentage point(s) ( 7.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 12.740 % or less than 9.740 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1%) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 15.740 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

Initial S.C. Initial ______
Initial ______ Initial ______

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 4.000 % of my overdue payment of principal and interest. I will pay this charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of the Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

Initial S.C. ______ Initial ______
Initial ______ Initial ______

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest In Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_______________ (Seal) -Borrower
SCOTT DAVID CLARK

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

_______________ (Seal) -Borrower

**[Sign Original Only]**

Pay to the order of
Green Tree Financial Servicing Corporation

Without recourse
PARAGON LENDING, INC.

Kathleen Hough, Corp. Secretary

# ALLONGE TO PROMISSORY NOTE

**FOR PURPOSES OF FURTHER ENDORSEMENT OF THE FOLLOWING DESCRIBED NOTE, THIS ALLONGE IS AFFIXED AND BECOMES A PERMANENT PART OF SAID NOTE.**

**Account Number** [redacted]

**Note Date: 09/29/1998**

**Amount: $ 148,500.00**

**Customer Name: Scott David Clark**

**Property Address: 34507 Elmtree Rd., McClelland, IA 51548**

********************************************************

**PAY TO THE ORDER OF:**

**WITHOUT RECOURSE**

**Green Tree Servicing LLC f/k/a Conseco Finance Servicing Corp. f/k/a Green Tree Financial Servicing Corporation**

**BY:** [signature]

**Name:** Teresa G Harris

**Title: Assistant Vice President**

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO:

PARAGON LENDING
9771-A SOUTHERN PINE BLVD.
CHARLOTTE, NC 28273

Loan No: [redacted]
Title Order No:
Escrow No:

Space above this line for Recorder's use

# CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value received, the undersigned hereby grants, assigns and transfer to , Green Tree Financial Servicing Corporation all beneficial interest under that certain Note and Deed of Trust dated SEPTEMBER 29, 1998 executed by SCOTT DAVID CLARK, Trustor, to CLASSIC TITLE COMPANY, , Trustee, and recorded as Instrument No. on in Book/Reel , Page/Image , Official Records in the County Recorder's office of POTTAWATTAMIE County, IA , describing land therein as:

A PART OF THE NORTHEAST 1/4 NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 75, RANGE 41, POTTAWATTAMIE COUNTY, IOWA, WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTH 1/4 CORNER OF SAID SECTION 26, THENCE SOUTH 00 DEGREES 42'05" WEST 475.68 FEET ALONG THE CENTERLINE OF A COUNTY ROAD, THENCE NORTH 89 DEGREES 17'55" WEST, 386.25 FEET THENCE NORTH 0 DEGREES 42'05" EAST 475.68 FEET, THENCE SOUTH 89 DEGREES 17'55" EAST 386.25 FEET TO THE POINT OF BEGINNING.

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to be accrued under said Deed of Trust. Dated SEPTEMBER 29TH, 1998

STATE OF North Carolina } S.S.
COUNTY OF Mecklenburg }

On November 5, 1998 before me, Sandra Logan a Notary Public in and for said County and State, personally appeared Kathleen Hough John W. Pritchard, Jr. personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Sandra Logan
Signature

My Commission Expires March 16, 2003

Paragon Lending

By: [signature]
Corporate Secretary

By: [signature]
President

FOR NOTARY STAMP

CORPADT (CDS-193) rev. 5/95

RECORDING REQUESTED BY

INDEX 10580
RECORDING FEE
AUDITOR FEE
RMA FEE

WHEN RECORDED MAIL TO:

[WHEN RECORDED RETURN TO]
NTC ATTEN:DARRELL COLON
420 N. BRAND BLVD., 4TH FLOOR LVD.
GLENDALE CALIFORNIA 91203

FILED FOR RECORD POTTAWATTAMIE CO. IA.
98 DEC 10 AM 10:20
JOHN SCIORTINO RECORDER

Loan No:
Title Order No:
Escrow No:

Space above this line for Recorder's use

# CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value received, the undersigned hereby grants, assigns and transfer to

, Green Tree Financial Servicing Corporation

all beneficial interest under that certain Note and Deed of Trust dated SEPTEMBER 29, 1998

executed by SCOTT DAVID CLARK , Trustor,

to CLASSIC TITLE COMPANY, , Trustee,

and recorded as Instrument No on in Book/Reel , Page/Image , Official Records in the County Recorder's office of POTTAWATTAMIE County, IA , describing land therein as:

A PART OF THE NORTHEAST 1/4 NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 75, RANGE 41, POTTAWATTAMIE COUNTY, IOWA, WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTH 1/4 CORNER OF SAID SECTION 26, THENCE SOUTH 00 DEGREES 42'05" WEST 475.88 FEET ALONG THE CENTERLINE OF A COUNTY ROAD, THENCE NORTH 89 DEGREES 17'55" WEST, 386.25 FEET THENCE NORTH 0 DEGREES 42'05" EAST 475.68 FEET, THENCE SOUTH 89 DEGREES 17'55" EAST 386.25 FEET TO THE POINT OF BEGINNING.

Together with the Note or Notes therein described or referred to, the money due and to become due thereon with interest, and all rights accrued or to be accrued under said Deed of Trust. Dated SEPTEMBER 29TH, 1998 .

STATE OF North Carolina } S.S.
COUNTY OF Mecklenburg }

On November 5, 1998 before me, Sandra Logan a Notary Public in and for said County and State, personally appeared Kathleen Hough John W. Pritchard, Jr. personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Sandra Logan
My Commission Expires March 16, 2003

Paragon Lending

By: Kathleen
Corporate Secretary

By:
President

CORPORATE SEAL SOUTH CAROLINA

FOR NOTARY STAMP

SANDRA LOGAN NOTARY PUBLIC

CORPADT (CDS-193) rev. 5/95

SCHEDULE "A"

A PART OF THE NORTHEAST 1/4 NORTHWEST 1/4 OF SECTION 26, TOWNSHIP 75, RANGE 41, POTTAWATTAMIE COUNTY, IOWA, WHICH IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTH 1/4 CORNER OF SAID SECTION 26, THENCE SOUTH 00 DEGRESS 42'05" WEST 475.68 FEET ALONG THE CENTERLINE OF A COUNTY ROAD, THENCE NORTH 89 DEGREES 17'55" WEST, 386.25 FEET THENCE NORTH 0 DEGRESS 42'05" EAST 475.68 FEET, THENCE SOUTH 89 DEGREES 17'55" EAST 386.25 FEET TO THE POINT OF BEGINNING.